**Rhonda RASCHE, et al., Plaintiffs,**

**v.**

**B.R. LANE, et al., Defendants.**

No. 15 C 7918

United States District Court,
N.D. Illinois, Eastern Division.

Signed December 8, 2015

Thomas A. Zimmerman, Jr.; Amelia Susan Newton, Matthew C. De Re, Nickolas J. Hagman, Zimmerman Law Offices, P.C., Chicago, IL, for Plaintiffs Rhonda Rasche, Daniel Chasteen, Ricardo Velez, Joseph Raddi, Albert Cundari, Joseph Spain, Luis Ivan Morales, Morgan Shastal, Remick Ware, Byron Herrera, Robert Pitts, Michael Chesniak, George Inniss, Vincent Ortega, Jesus Navarro, Howard Robert Anderson, Doel Polanco, Ikem Mikhail, Edward Wastag, Joseph Joost, Brian Thompson.

Thomas A. Ioppolo, Sunil Shashikant Bhave, Illinois Attorney General, Bruce Robert Meckler, Meckler, Bulger & Tilson, Brian J. Williams, Corey Thomas Hickman, Cozen O'Connor, Chicago, Il, Michelle Jeanette Hirsch, Georgia Department of Law, Atlanta, GA, Robert Lawrence Quinan, Jr., Office of the Attorney General, Boston, MA, Mark G. Sands, Assistant Attorney General, Lansing, MI, Oliver J. Larson, Minnesota Attorney General's Office, St. Paul, MN, Roger E. Gibson, Office of the Attorney General of New Jersey, Trenton, NJ, Amy Katharine Dilworth, Virginia Lottery, Richmond, VA, Thomas Shawn Kleeh, Steptoe & Johnson PLLC, Charleston, WV, for Defendants B.R. Lane, The Illinois Department of the Lottery, Illinois Lottery Control Board, Northstar Lottery Group, LLC., Leslie Geissler Munger, Michael W. Frerich, Arizona State Lottery Commission, Tony Bouie, Office of the Arkansas Lottery, Bishop Woosley, California Lottery Commission, Nathaniel Kirtman, III, Colorado Lottery Commission, Laura Solano, Connecticut Lottery Corporation, Annie M. Noble, Delaware Lottery, Vernon Kirk, Florida Lottery, Tom Delacenserie, Georgia Lottery Corporation, Debbie D. Alford, Idaho Lottery Commission, Jeffrey R. Anderson, State Lottery Commission of Indiana, Sarah M. Taylor, Iowa Lottery Board, Terry Rich, Kansas Lottery Commission, Terry Presta, Kentucky Lottery Corporation, Arthur L. Gleasor, Jr., Louisiana Lottery Corporation, Rose Hudson, Maine State Liquor & Lottery Commission, Gregg Mineo, Maryland Lottery and Gaming Control Commision, Gordon Medenica, Massachusetts State Lottery, Michael R. Sweeney, Michigan Bureau of State Lottery, M. Scott Bowen, Minnesota State Lottery, Ed Van Petten, Missouri Lottery Commission, May Scheve Reardon, Montana Lottery Commission, Angela Wong, Nebraska Lottery, Jill Marshall, New Hampshire Lottery Commission, Charles McIntyre, New Jersey Lottery Commission, Carole Hedinger, New Mexico Lottery Authority, David Barden, New York Lottery and Gaming Commission, Gardner Gurney, North Carolina Lottery Commission, Alice Garland, North Dakota Lottery, Randy Miller, Ohio Lottery Commission, Jack Roberts, Pennsylvania Lottery, Drew Svitko, Rhode Island Lottery, Gerald Aubin, South Carolina Lottery Commission, Paula Harper Bethea, South Dakota Lottery Commission, Norm Lingle, Tennessee Education Lottery Corporation, Rebecca Hargrove, Texas Lottery Commission, Gary Grief, Vermont Lottery Commission, Gregory Smith, Virginia Lottery Board, Paula I. Otto, Washington Lottery Commission, Bill Hanson, West Virginia Lottery Commission, John C. Musgrave, Wisconsin Lottery, Michael Edmonds, Wyoming Lottery Corporation, Jon Clontz, Washington, D.C. Lottery and Charitable Games Control Board, Tracy Cohen, US Virgin Islands Lottery Commission, Juan Figueroa, Sr., Loteria Electronica De Puerto Rico, Antonio Perez Lopez, Multi-State Lottery Association, Mega Millions Consortium, Dennis Berg, Oklahoma Lottery Commission, Rollo Redburn, Oregon Lottery Commission, Michael W. Frerichs.

## MEMORANDUM OPINION
## AND ORDER

Chief Judge Ruben Castillo, United States District Court

This case is yet another consequence of the unfortunate budget impasse in Illinois. In this action, a group of Illinois lottery winners, on behalf of themselves and a putative class, sue the Illinois Department of the Lottery (the "Department"), its Director B.R. Lane, the Illinois Comptroller, and the Illinois Treasurer (collectively, the "Illinois Defendants"), as well as lottery officials from nearly every other state in the country. They allege that their rights are being violated by the Department's delay in paying them their prize money. (R. 12, Am. Compl.) The Illinois Defendants move to dismiss on Eleventh Amendment immunity grounds. (R. 35, Ill. Defs.' Mot. to Dismiss.) For the reasons stated below, the motion to dismiss is granted.

### BACKGROUND

The Department offers more than 50 games of chance to the general public. (R. 12, Am. Compl. ¶ 1.) Many of those games are offered exclusively within the state of Illinois, such as instant "scratch-off games and daily in-state number drawing games". (Id.) In addition to those in-state games, the Department also participates in the interstate Powerball and Mega Millions lottery games. (Id. ¶ 2.) The jackpots for the Powerball and Mega Millions games are compiled by aggregating proportional contributions from each participating jurisdiction's department of the lottery. (Id.)

On June 30, 2015, the Illinois state budget for the 2015 fiscal year expired. (Id. ¶ 33.) Illinois failed to adopt—and still has yet to adopt—a budget for the 2016 fiscal year, which runs from July 1, 2015, through June 30, 2016. (Id. ¶¶ 33–34.) On July 1, 2015, Lane announced that due to the budget impasse, the Department would cease making payments to individuals who won in excess of $25,000 from any lottery game offered by the Department, including the interstate Powerball and Mega Millions games. (Id. ¶¶ 3, 34.) On or about August 28, 2015, the Department made the following public announcement:

> Due to the ongoing budget situation in Springfield, some lottery winner payments have been delayed. All winners will be paid in full as soon as the Lottery and the Illinois Comptroller have the legislative authority to do so. Currently, winners may claim prizes under $600 at any of our 8,000 retail locations, and prizes under $25,000 may be claimed at any Lottery claims center, found at illinoislottery.com.

(Id. ¶ 4.) On October 15, 2015, the Department announced that payment would be delayed to any lottery winner whose prize money exceeded $600. (Id. ¶ 7.) As a result of these pronouncements, numerous Illinois lottery winners have been unable to collect their winnings. (Id. ¶¶ 6–8.) This includes Plaintiffs, who won between $1,000 and $2 million from the Illinois lottery and/or the interstate lotteries after the delay in payment was announced. (Id. ¶¶ 42, 58–84.) Plaintiffs estimate that roughly $288 million in lottery payments are currently being delayed. (Id. ¶ 42.) Despite the delay in payment to winners, the lottery is still operating as usual, with tickets being sold on a daily basis. (Id. ¶ 44.)

On September 9, 2015, Plaintiffs filed this action in federal court against the Illinois Defendants.[1] (R. 1, Compl.) On No-

---

1. Plaintiffs also named two additional entities, the "Illinois Lottery Control Board" and

"Northstar Lottery Group, LLC," which have

vember 2, 2015, Plaintiffs filed a 118-page amended complaint, reiterating their claims against the Illinois Defendants and adding claims against lottery agencies and officials from nearly every U.S. state, as well as Puerto Rico and the U.S. Virgin Islands. (R. 12, Am. Compl.) They assert thirteen separate counts, including violations of their federal due process rights under 42 U.S.C. § 1983, a racketeering conspiracy claim under 18 U.S.C. § 1961, and related state law claims for unjust enrichment, conversion, and other torts. (*Id.*) Plaintiffs also move for certification of a class comprised of "[a]ll winners of lottery games offered by the Illinois Department of the Lottery whose claim to prizes in excess of $600 existed on or after July 1, 2015, and who have not been paid." (R. 39, Am. Mot. for Class Cert, at 1.)

In this action, they seek an order "[a]warding Interstate Lottery Plaintiffs and the Interstate Lottery Class members their lottery winnings and all accrued interest thereon." (R. 12, Am. Compl. at 61.) They also seek various forms of injunctive and declaratory relief, including a declaration that they are entitled to their winnings plus interest, and the issuance of an order that would:

(1) prevent the Illinois Department of the Lottery from selling lottery tickets, for both interstate and intrastate games, with potential winnings in excess of $600, (2) prevent the Illinois Department of the Lottery from making payments to finance the operation of the Illinois Lottery until all Illinois Lottery Winners are paid, (3) post a notice at the point of sale to inform individuals that they will not be able to collect winnings in excess of $600, to the extent the Illinois Department of the Lottery continues to sell lottery tickets, and (4) require Defendants to transfer all unpaid lottery win-

since been dropped from the suit. (*See* R. 1,

nings and accrued interest thereon to the custody of the Court.

(*Id.* at 51, 61.) They also seek an award of attorneys' fees and costs. (*Id.* at 62.)

The Illinois Defendants now move for dismissal of the claims raised against them based on the Eleventh Amendment. (R. 35, Ill. Defs.' Mot. to Dismiss.) Plaintiffs oppose dismissal, arguing that the Department is not an "arm of the state," and further, that the injunctive and declaratory relief they seek is not barred by the Eleventh Amendment. (R. 37, Pls.' Resp.)

## ANALYSIS

Before turning to the merits, the Court must address a preliminary matter. On November 10, 2015, Plaintiffs' filed an emergency motion seeking various forms of preliminary injunctive relief while this case is pending. (R. 17, Pls.' Mot. For Prelim. Injunction.) The Court set the matter for an evidentiary hearing on December 16, 2015. (R. 30, Min. Entry.) However, after engaging in settlement negotiations with the very capable Magistrate Judge Mary M. Rowland, the parties reached an informal agreement that satisfied Plaintiffs, and they now wish to withdraw their motion without prejudice. (*See* R. 60, Order; R. 66, Mot. To Withdraw.) That request is granted. The motion for preliminary injunctive relief is denied without prejudice, and the evidentiary hearing is vacated. With that issue resolved, the Court turns to the merits.

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

Compl. at 1; R. 12, Am. Compl. at 1.)

U.S. Const.amend. XI. Put simply, "the Eleventh Amendment guarantees that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Bd. of Regents of Univ. of Wis. Sys. v. Phx. Int'l Software, Inc.*, 653 F.3d 448, 457 (7th Cir.2011) (internal quotation marks citation omitted). "If properly raised, the amendment bars actions in federal court against a state, state agencies, or state officials acting in their official capacities." *Ind. Prot. & Advocacy Servs. v. Ind. Family & Soc. Servs. Admin.*, 603 F.3d 365, 370 (7th Cir.2010); *see also Kentucky v. Graham*, 473 U.S. 159, 169, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) ("[A]bsent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court. ... This bar remains in effect when State officials are sued for damages in their official capacity."); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment"). The Eleventh Amendment was intended "to prevent the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993) (citation omitted). Thus, it provides not merely a defense to liability but immunity from suit. *Id.* at 145–46, 113 S.Ct. 684.

The Eleventh Amendment raises obvious problems for Plaintiffs, as they are attempting to sue three state officials in their official capacities as well as an Illinois department of government. (R. 12, Am. Compl. ¶¶ 85–88.) Plaintiffs nevertheless argue that their claims are not barred by the Eleventh Amendment for two reasons. (R. 37, Pls.' Resp. at 2–11.) The Court addresses each in turn.

## A. Whether the Department is an "Arm of the State"

Plaintiffs' primary argument is that under *Burrus v. State Lottery Comm'n of Ind.*, 546 F.3d 417 (7th Cir. 2008), the Department is not an "arm of the state" and therefore has no Eleventh Amendment immunity. (R. 37, Pls.' Resp. at 6–11.) In *Burrus*, the U.S. Court of Appeals for the Seventh Circuit held that the defendant, the "State Lottery Commission of Indiana d/b/a The Hoosier Lottery", could not assert an Eleventh Amendment immunity defense. 546 F.3d at 417–18. Although both cases obviously involve lotteries, there is a key distinction between *Burrus* and this case. In *Burrus*, the defendant was not a department of the state of the Indiana; it was a "commission" whose relationship to the state was not readily apparent. *Id.* Thus, the Seventh Circuit was required to conduct a detailed analysis to determine whether the lottery commission could be deemed an "arm of the state" for Eleventh Amendment purposes, considering such factors as its legal structure and its financial relationship to the state. *Id.* at 420–23; *see also Kashani v. Purdue Univ.*, 813 F.2d 843, 845–47 (7th Cir.1987) (considering these same factors to determine whether university with ties to the state was entitled to Eleventh Amendment immunity). Here, by contrast, Plaintiffs are suing three state officials in their official capacities and a state department, which by operation of state law is part of the executive branch. *See* 20 Ill. Comp. Stat. 5/5–15 ("The Departments of State government are created as follows: ... The Department of the Lottery. ...") The analysis need go no further, because it is clear that "a suit in which the State or

one of its agencies or *departments* is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst*, 465 U.S. at 100, 104 S.Ct. 900 (emphasis added).

Plaintiffs have not pointed the Court to any cases where a department of the State of Illinois was *not* found to have Eleventh Amendment immunity, and, to the contrary, courts have routinely held that claims against Illinois departments—which appear on the same statutory list as the Department of the Lottery—are barred under the Eleventh Amendment. *See, e.g. Woods v. Ill. Dep't of Children & Family Servs.*, 710 F.3d 762, 763–64 (7th Cir.2013) (Illinois Department of Children and Family Services was entitled to Eleventh Amendment immunity); *Ill. Dunesland Preserv. Soc'y v. Ill. Dep't of Natural Res.*, 584 F.3d 719, 721 (7th Cir.2009) (Illinois Department of Natural Resources was entitled to Eleventh Amendment immunity); *Velasco v. III. Dep't of Human Servs.*, 246 F.3d 1010, 1016 (7th Cir.2001) (Illinois Department of Human Services was entitled to Eleventh Amendment immunity); *Price v. Ill. Dep't of Ins.*, No. 12 C 6959, 2013 WL 535563, at *2 (N.D.Ill. Feb. 12, 2013) (Illinois Department of Insurance was entitled to Eleventh Amendment immunity); *Benjamin v. Ill. Dep't of Fin. & Prof'l Regulation*, 837 F.Supp.2d 840, 851–52 (N.D.Ill.2011) (Illinois Department of Financial and Professional Regulation was entitled to Eleventh Amendment immunity). These courts did not belabor their analysis because the law is clear: state departments are entitled to Eleventh Amendment immunity. *See Pennhurst*, 465 U.S. at 100–01, 104 S.Ct. 900.

Indeed, in an earlier case, a court in the Central District concluded that the Illinois lottery, which was then part of the state's Department of Revenue, was entitled to Eleventh Amendment immunity. *Malone v. Schenk*, 638 F.Supp. 423, 426 (CD.Ill.1985). Although the statutory structure has changed and the lottery is now its own department, the key elements for the applicability of Eleventh Amendment immunity remain: the lottery is run by a state department and its funding is part of the state treasury. *See* 20 ILL. COMP. STAT. 5/5-15; *see also* 20 ILL. COMP. STAT. 1605/20 ("There is created in the State Treasury a special fund to be known as the 'State Lottery Fund.'"). Thus, the Department is entitled to Eleventh Amendment immunity.

Even if a more nuanced analysis like that conducted by the Seventh Circuit in *Burrus* is required, there are significant differences between the Department and the quasi-public lottery commission that operates in Indiana. As recognized by the Seventh Circuit in *Burrus*, the Indiana lottery commission was expressly created "as a separate body politic and corporate from state government." *Burrus*, 546 F.3d at 422 (citing IND. CODE § 4–30–1–2(1)). The enabling statute expressly provided that the commission was intended to "function as much as possible as an entrepreneurial business enterprise," and should be "operated as a self-supporting revenue raising operation." *Id.* (citing IND. CODE § 4–30–1–2(1)-(3)). The Seventh Circuit found it critical that the Indiana lottery functioned, for the most part, independent of state government. *See Burrus*, 546 F.3d at 420–23.

In contrast to Indiana, the Illinois Lottery Act was "enacted to implement and establish within the State a lottery *to be conducted by the State through the Department.*'" 20 ILL. COMP. STAT. 1605/2 (emphasis added). This language makes it clear that the lottery is a state-run operation. The Department was established like any other department that is part of the

state's executive branch. 20 ILL. COMP. STAT. 5/5–15 (creating the Department along with a list of other state departments). As with other cabinet-level positions, its director is appointed by the Governor with the advice and consent of the Illinois Senate. 20 ILL. COMP. STAT. 1605/5(a). Its operating budget, the State Lottery Fund, is part of the state treasury. 20 ILL. COMP. STAT. 1605/20. All revenue received by the Department must be deposited into the state treasury. 20 ILL. COMP. STAT. 1605/21 ("All income arising out of any activity or purpose of the Department shall, pursuant to the State Finance Act, be paid into the State Treasury except as otherwise provided by the rules and regulations of the Department and shall be covered into a special fund to be known as the State Lottery Fund." (internal footnote omitted)). Once money has been deposited into the treasury, by operation of the Illinois Constitution only the Illinois Treasurer has the authority to spend that money, and only then upon the direction of the Illinois Comptroller. See ILL. CONST. art. V, §§ 17-18. All net proceeds from the lottery are paid into the state's common school fund. 20 ILL. COMP. STAT. 1605/2. The Department is expressly made "accountable to the General Assembly" and is subject to a "comprehensive system of regulation, audits, reports, and enduring operational oversight." 20 ILL. COMP. STAT. 1605/2.

As Plaintiffs point out, the Department does have legislative authority to make payment of prizes of up to $25,000 from a separate account—presumably so that constitutional payment procedures do not have to be invoked every time someone wins a small amount of prize money—but that account is itself subject to legislative appropriation. 20 ILL. COMP. STAT. 1605/20.1(a) ("The Department shall submit vouchers from time to time as needed

for reimbursement of this account from moneys appropriated for prizes from the State Lottery Fund."). The money in this account must be deposited into the "Public Treasurers' Investment Pool," 20 ILL. COMP. STAT. 1605/20.1(a), a fund established and administered by the Illinois Treasurer "to supplement and enhance the investment opportunities otherwise available to other custodians *of public* funds *fox public agencies* in this State." 15 ILL. COMP. STAT. 505/17 (emphasis added). Any investment income earned on this separate account must be deposited by the Department into the state's common school fund on a monthly basis. 20 ILL. COMP. STAT. 1605/20.1(a).

The structure of the Department thus stands in stark contrast to that of the Indiana lottery commission. See *Burrus*, 546 F.3d at 420–23; *see also Kashani*, 813 F.2d at 846 (university was entitled to Eleventh Amendment immunity where members of its governing body were appointed by the governor, there was close oversight of its activities by the legislature, and payment of a judgment would directly impact the state's treasury). Indeed, Illinois itself views the lottery as being part of the state's government. See *Smith v. Jones*, 113 Ill.2d 126, 100 Ill.Dec. 560, 497 N.E.2d 738, 740–41 (1986) (claim against Director of the Illinois State Lottery based on failure to award full amount of announced prize "must be regarded as a suit against the State of Illinois" and was thus barred by state sovereign immunity). As the Seventh Circuit held in *Burrus*, this further bolsters the conclusion that the Eleventh Amendment applies. See *Burrus*, 546 F.3d at 422 ("While the question of sovereign immunity is a matter of federal law, the state of Indiana's own view of the entity it created is significant."). For these reasons, the Court finds Plaintiffs' reliance

on *Burrus* unavailing.[2]

### B. *Ex parte Young*

 Plaintiffs' remaining argument is that their claims for injunctive and declaratory relief are not barred by the Eleventh Amendment under the doctrine *of Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). (*See* R. 37, Pls.' Resp. at 2-5.) In *Ex parte Young*, a federal court enjoined the Attorney General of the State of Minnesota from bringing suit to enforce a state statute that allegedly violated the Fourteenth Amendment. 209 U.S. at 133, 28 S.Ct. 441. The Supreme Court held that the Eleventh Amendment did not prohibit issuance of the injunction, on the theory that an unconstitutional enactment is "Void" and therefore does not "impart to [the officer] any immunity from responsibility to the supreme authority of the United States." *Id.* at 160, 28 S.Ct. 441; *see also Edelman v. Jordan*, 415 U.S. 651, 664, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Thus, while the Eleventh Amendment bars damages claims against the state, its agencies, and its officials acting in their official capacities, it does not preclude claims against state officials for injunctive relief requiring them to comply with federal law. *See Kashani*, 813 F.2d at 848.

 Here, Plaintiffs argue that their claims for injunctive and declaratory relief are not barred by the Eleventh Amendment because "Plaintiffs and Class members seek prospective injunctive relief that will preserve the status quo (*i.e.*, their money)." (R. 37, Pls.' Resp. at 4.) Specifically, they seek "prospective injunctive relief requiring Illinois Defendants to preserve their lottery winnings ... and to prohibit Illinois Defendants from using their lottery winnings to pay the operating expenses of the Illinois Lottery," so as to forestall any further deprivation of their federal constitutional rights. (*Id.*) Such relief includes a declaration that Plaintiffs are entitled to their full winnings plus interest, as well as various forms of injunctive relief intended to prevent the dissipation of lottery funds. (*See* R. 12, Am. Compl. at 51, 62.) In Plaintiffs' view, these claims fall within the scope of *Ex parte Young* and are not barred by the Eleventh Amendment. (*See* R. 37, Pls.' Resp. at 4.) The Court disagrees.

In *McDonough Assocs., Inc. v. Grunloh*, 722 F.3d 1043 (7th Cir.2013), the Seventh Circuit considered—and rejected—an *Ex parte Young* argument nearly identical to the one Plaintiffs raise here. That case involved "an attempt by a state contractor ... to pursue what amount[ed] to a breach of contract claim against the State of Illinois in federal court." *Id.* at 1045. "Threatened with bankruptcy and collapse if it did not receive payments it contends were due from the state, McDonough presented the district court with a creative theory for relief under the Due Process Clause of the Fourteenth Amendment." *Id.* In response, the district court entered a temporary restraining order requiring state officials to execute certain supplemental agreements with the plaintiffs so that they could be paid for their past work. *Id.* The Seventh Circuit held that such action was improper, because the relief ordered was clearly barred by the Eleventh Amendment. *Id.* The Circuit observed that while the plaintiff had "cloaked its claim in the language of federal due process, its suit remain[ed]

---

2. The Court notes that *Burrus* does not appear to have any application to the non-lottery officials named as defendants. Plaintiffs have offered no specific reason why the claims against the Illinois Comptroller and Illinois Treasurer would not be barred by the Eleventh Amendment under clear Supreme Court precedent, other than their *Ex parte Young* argument addressed below.

in substance an effort to have a federal court order state officials to make payments from the state treasury to remedy past alleged breaches of contract." *Id.* at 1045. The order entered by the district court "effectively ordered state officials to pay [the plaintiff] from the state treasury to compensate for alleged breaches of contract." *Id.* Such relief did not fall within the *Ex parte Young* exception. *Id.*

As the Seventh Circuit explained, under *Ex parte Young* "courts may enjoin ongoing behavior by state officials that violates federal law." *Id.* at 1050. It is also permissible to "order state officials to act in a certain manner going forward that may cost the state money to implement." *Id.* Courts "may not, however, *direct a state to make payments to resolve a private debt or to remedy a past injury to a private party.*" *Id.* at 1050–51 (emphasis added). The plaintiff in *McDonough* had argued that "the relief requested is not payment for a past injury but rather a court order that defendants resume the normal course of business." *Id.* at 1051. "Framing the relief in this way, McDonough has tried to shoehorn its request into *Ex parte Young* by characterizing it as a prospective decree that merely ordered state officials to stop violating its federal due process rights." *Id.* The Seventh Circuit rejected that argument:

> While the payment of funds is indeed the second step following from the TRO after the procedural act of signing [the supplemental agreements], it is more importantly the primary effect. *Ex parte Young* and its progeny permit equitable relief resulting in the state expenditure of funds only when that expenditure is an ancillary, not primary, effect of the relief. ... The essential nature of the relief sought would require direct payments by the state from its treasury, which would thus force the defendants

acting in their official capacities to extract funds from the State's treasury for the ultimate benefit of the plaintiffs. ... [W]e are not persuaded by McDonough's creative styling of its claim. It remains in substance a prayer for relief based on state law for an alleged monetary loss resulting from a past breach of a legal duty on the part of the defendant state officials, which is barred by the Eleventh Amendment.

*Id.* at 1051–52 (internal quotation marks and citations omitted). In simple terms, "*Ex parte Young* cannot be used to obtain an injunction requiring the payment of funds from the State's treasury" or "an order for specific performance of a State's contract." *Id.* at 1052 (citation omitted).

An earlier Seventh Circuit case affirms this same principle. *See Council 31 of AFSCME v. Quinn,* 680 F.3d 875 (7th Cir.2012). In *Council 31,* the plaintiffs, a union representing state employees, brought suit against state officials to challenge the state's pay freeze, which they claimed violated the federal Contracts Clause and Equal Protection Clause by repudiating their collective bargaining agreement. *Id.* at 878–80. The plaintiffs argued that their request for injunctive relief, which sought to prevent enforcement of the pay freeze, fell within the *Ex parte Young* exception. *Id.* at 883. The Seventh Circuit disagreed, observing that their argument "ignores our holding that the eleventh amendment bars a claim for injunctive relief...that would require direct payments by the state from its treasury for the indirect benefit of a specific entity." *Id.* at 884 (internal quotation marks and citations omitted). It did not matter that the plaintiffs sought only an injunction to preclude state officials from enforcing the pay freeze "without explicitly directing payment from the State's treasury." *Id.* The injunction, in effect, "would

force the defendants, acting in their official capacities, to extract funds from the State's treasury for the ultimate benefit of the plaintiffs." *Id.* Such relief was barred by the Eleventh Amendment. *Id.*

■ This same reasoning applies here. Plaintiffs' claims—regardless of their labeling—are all premised on the fact that they are entitled to payment of their lottery winnings. At bottom, this is a contract dispute: Plaintiffs allege that they purchased winning lottery tickets and are entitled to payment under the state's lottery rules, but that the state has breached its part of the agreement by failing to remit payment.[3] Although Plaintiffs attempt to "shoehorn" their dispute into one involving due process, it is clear that what they are seeking is the benefit of this "contract," *i.e.*, their lottery winnings. *See McDonough*, 722 F.3d at 1045; *see also Taake v. Cty. of Monroe*, 530 F.3d 538, 543 (7th Cir.2008) ("Taake used the words 'procedural due process' in his complaint, but the remedies he seeks belie any suggestion that Taake is interested in notice and a hearing on the County's decision not to sell him the land. The only remedies Taake desires are for the alleged breach of contract: damages, specific performance of the land sale, and an injunction prohibiting the County from transferring or disposing of the land in a manner that violates the purported contract."); *Goros v. Cty. of Cook*, 489 F.3d 857, 860 (7th Cir.2007) (despite plaintiffs' attempt to assert a due process claim based on alleged interference by county officials with a collective bargaining agreement, it was clear from their complaint that "Plaintiffs don't want *process*; they want money").

Payment of their lottery winnings, plus interest, is at the heart of the relief Plaintiffs seek. (R. 12, Am. Compl. at 51, 61-62.) Although they seek injunctive and declaratory relief, it is all geared toward securing the money that they claim they are owed. (*Id.*) There is no substantive relief requested that is truly "ancillary" to the payment of their lottery winnings. *See Edelman*, 415 U.S. at 668, 94 S.Ct. 1347. Ordering the state to pay Plaintiffs their lottery winnings, or ordering sequestration of state funds or other action as a step toward that payment, is not the type of relief encompassed within the *Ex parte Young* doctrine. *See McDonough*, 722 F.3d at 1050–52; *see also Edelman*, 415 U.S. at 666, 94 S.Ct. 1347 ("We do not read *Ex parte Young* or subsequent holdings of this Court to indicate that any form of relief may be awarded against a state officer, no matter how closely it may in practice resemble a money judgment payable out of the state treasury, so long as the relief may be labeled 'equitable' in nature."); *MSA Realty Corp. v. Illinois*, 990 F.2d 288, 293 (7th Cir.1993) (where a plaintiffs request for injunctive relief "would have an effect upon the state treasury that is not merely ancillary but is the essence of the relief sought," it is barred by the Eleventh Amendment).

Illinois lottery winners, understandably, wish to get paid. But this Court cannot disregard fundamental principles of federalism and long-standing rules prohibiting federal courts from interfering with the state's operation of its own treasury. Whatever the appeal of an argument that the state should pay its lottery winners (and, indeed, all its creditors), the Elev-

---

**3.** Indeed, Illinois law recognizes that lottery winners have an available remedy in the Illinois Court of Claims based on breach of contract when their winnings are unpaid. *See Smith*, 100 Ill.Dec. 560, 497 N.E.2d at 741 (claim by lottery winner against Director of Illinois State Lottery for failure to pay full amount of prize money announced was in essence a breach of contract claim that must be brought in the Illinois Court of Claims).

enth Amendment was a "swift and direct rejection" of the notion that federal courts have the power to compel states to comply with their financial obligations to private parties. *McDonough*, 722 F.3d at 1053. For these reasons, Plaintiffs' claims against the Illinois Defendants, whether for damages or nominally seeking injunctive or declaratory relief, are all barred by the Eleventh Amendment. This ruling applies with equal force to Plaintiffs' state law claims. Indeed, "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Pennhurst*, 465 U.S. at 106, 104 S.Ct. 900. "Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment." *Id.; see also James v. Madigan*, 373 Fed.Appx. 619, 621 (7th Cir.2010) ("Although *Ex Parte Young*...permits prospective relief against a state official to ensure future compliance with federal law, this approach does not apply to claims under state law."). Accordingly, the Illinois Defendants' motion to dismiss must be granted.

It is not entirely clear what remains of this case after this ruling, but Plaintiffs have argued that granting the motion to dismiss would not fully resolve their claims against the Illinois Defendants. (R. 37, Pls.' Resp. at 2, 6.) At a minimum, this ruling will dramatically alter the landscape of this case. For clarity of the record, the complaint will be dismissed in its entirety. Plaintiffs will be granted an opportunity to file an amended pleading asserting any claims that, in their view, survive this Court's Eleventh Amendment ruling. The motion to dismiss filed by the Minnesota lottery defendants (R. 21) will be denied without prejudice, but may be renewed depending on what Plaintiffs allege in their amended complaint.[4]

## CONCLUSION

For the foregoing reasons, the Illinois Defendants' motion to dismiss (R. 35) is GRANTED. The complaint (R. 12) is DISMISSED WITHOUT PREJUDICE. The motion to dismiss filed by the Minnesota defendants (R. 21) is DENIED WITHOUT PREJUDICE. Plaintiffs are GRANTED 30 days to file an amended complaint consistent with this opinion. The defendants are GRANTED 21 days thereafter to answer or otherwise plead in response to the amended complaint. Plaintiffs' motion to withdraw their request for a preliminary injunction (R. 66) is GRANTED. The motion for a preliminary injunction (R. 17) is DENIED WITHOUT PREJUDICE. The evidentiary hearing scheduled on December 16, 2015, is VACATED.

---

4. Many of the out-of-state defendants have not yet been served, but several of them weighed in on Plaintiffs' now-withdrawn request for preliminary injunctive relief. They raise a host of thorny procedural issues, including problems with service of process and arguments related to whether this Court has personal jurisdiction over agencies and officials from other states. (*See* R. 40,44, 45,46, 48, 51, 54, 56.) Depending on how the lotteries are structured in other states, Plaintiffs' claims could trigger the same Eleventh Amendment concerns outlined in this opinion. Aside from these issues, the record suggests that there is another potential barrier to Plaintiffs' claims against the out-of-state defendants: Illinois lottery rules (which are incorporated on the back of each ticket sold in Illinois) provide that when a dispute arises regarding one of the multi-state lotteries, the only proper defendant is the jurisdiction that issued the lottery ticket, in this case Illinois. (*See* R. 24-1, 111. Dep't of Lottery Game Rules 2.9.) Because the complaint is being dismissed and Plaintiffs may or may not decide to include the out-of-state defendants in their amended complaint, the Court leaves the resolution of these issues for another day.